**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRISTOL-MYERS SQUIBB CO. and | ) | |
| E. R. SQUIBB & SONS, L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No.  23-79-MFK |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ASTRAZENECA PHARMACEUTICALS LP | ) | |
| and ASTRAZENECA AB., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca UK AB. (collectively,

"Defendants" or "AstraZeneca"), by their attorneys, answer the complaint of Plaintiffs Bristol-

Myers Squibb Co. ("BMS") and E. R. Squibb & Sons, L.L.C. ("Squibb") (collectively,

"Plaintiffs") as follows.  This Answer reproduces Plaintiffs' allegations followed by Defendants'

responses.

## INTRODUCTION

1.      According to the United States Centers for Disease Control and Prevention, more
than 1.7 million people in the United States are diagnosed with cancer each year
(https://www.cdc.gov/chronicdisease/resources/publications/factsheets/cancer.htm).  Cancer is a
disease that results from the uncontrolled proliferation of cells that were once normal but have
transformed into cancerous cells.  Although the human immune system sometimes has the
potential to eliminate cancerous cells, cancer cells have the ability to "turn off" or evade the
immune system, allowing the cancer cells to grow unchecked.  Tumor growth and tumor
metastasis can lead to devastating disease, and possibly death.

 **ANSWER:   ADMITTED** that the United States Centers for Disease Control and

Prevention webpage cited by Plaintiffs states that more than 1.7 million people in the United

States are diagnosed with cancer each year.  **ADMITTED** that some cancers may result from

the uncontrolled proliferation of cancerous cells.  **ADMITTED** that in some patients, some

cancer cells may be able to evade the human immune system.  **ADMITTED** that it is possible

for tumor growth and tumor metastasis to lead to disease or death.  The remaining allegations in

paragraph 1 of the Complaint are vague and unclear; Defendants are unable to form a belief as

to the truth of those allegations and therefore **DENY** them.

2.      This lawsuit relates to BMS's groundbreaking treatments for cancer that fall
within a field known as "cancer immunotherapy."  The treatment of cancer using immunotherapy
represents a scientific breakthrough that has revolutionized cancer treatment by manipulating a
patient's immune system to eliminate cancer cells.

   **ANSWER:   ADMITTED** that Defendants' product, IMFINZI (durvalumab), is a

groundbreaking treatment for cancer.  The remaining allegations in paragraph 2 of the

Complaint are vague and unclear; Defendants are unable to form a belief as to the truth of those

allegations and therefore **DENY** them.

3.      The human immune system is formed of organs, specialized cells, and substances
that protect individuals from infections and disease.  T cells are one class of specialized cells that
play an important role in the human immune system.  One major function of T cells is to destroy
pathogens or cancer cells, and to do that the T cell must distinguish healthy cells from infected or
cancerous cells through the activation or deactivation of various receptors on the T cell surface,
which are known as immune checkpoint receptors.  Such receptors can be activated or
deactivated by binding to other proteins known as ligands.

   **ANSWER:   ADMITTED** that the human immune system is formed of organs,

specialized cells, and substances that protect individuals from infections and disease.

**ADMITTED** that T cells are one class of specialized cells that play an important role in the

human immune system.  **ADMITTED** that one major function of some T cells is to destroy

pathogens or cancer cells.  **ADMITTED** that T cells can distinguish healthy cells from infected

or cancerous cells through the activation or deactivation of various receptors on the T cell

surface.  **ADMITTED** that receptors on the T cell surface can be activated or deactivated by

binding to other proteins known as ligands.  Otherwise, **DENIED**.

4.      One such immune checkpoint receptor that regulates the body's immune response

is the T cell receptor cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4).  The CTLA-4 receptor can bind two ligands, B7-1 (CD80) and B7-2 (CD86), which can be found on another type of immune system cell, called an antigen-presenting cell.  When a T cell's CTLA-4 receptor binds its ligands, the T cell is deactivated and rendered unable to destroy cancer cells.  When the interaction between a T cell's CTLA-4 receptor and its ligands B7-1 and B7-2 is blocked, however, the B7 ligands are then free to bind another signaling protein located on the T cell, called CD28, that has the opposite effect on the T cell—it induces T cell activation so that the T-cell can target and kill cancer cells.

ANSWER:   ADMITTED that the T cell receptor cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) can regulate the body's immune response.  ADMITTED that the CTLA-4 receptor can bind two ligands, B7-1 (CD80) and B7-2 (CD86), which can be found on an antigen-presenting cell.  ADMITTED that when the interaction between a T cell's CTLA-4 receptor and its ligands B7-1 and B7-2 is blocked, the B7 ligands can bind another signaling protein located on the T cell, called CD28.  ADMITTED that CD28 can induce T cell activation so that the T-cell can target and kill cancer cells.  The remaining allegations in paragraph 4 of the Complaint are vague and unclear; Defendants are unable to form a belief as to the truth of those allegations and therefore DENY them.

5.      BMS has been at the forefront of the cancer immunotherapy field, and has developed biopharmaceuticals known as checkpoint inhibitors that improve the abilities of patients' immune systems to target and kill cancers cells.  Indeed, BMS's extensive research efforts have led to it having developed three FDA-approved checkpoint inhibitors to date.  BMS, in fact, developed the first checkpoint inhibitor to be approved anywhere in the world, ipilimumab (YERVOY®).  In March 2011, the FDA awarded BMS's YERVOY® approval for the treatment of melanoma.  With this approval, YERVOY® also became the first new treatment approved for metastatic melanoma in more than a decade.  YERVOY® is a human monoclonal IgG1 anti-CTLA-4 antibody.  It is a blocking antibody, meaning it prevents the interaction between CTLA-4 and the B7 ligands, thereby allowing for tumor-specific T-cell activation.

ANSWER:   ADMITTED that according to its prescribing information, YERVOY® (ipilimumab) is a human cytotoxic T-lymphocyte antigen 4 (CTLA-4) blocking antibody indicated for some cancer treatments.  ADMITTED that upon information and belief, YERVOY® received FDA approval in March 2011 for the treatment of unresectable or

metastatic melanoma.  The remaining allegations in paragraph 5 of the Complaint are **DENIED**

because they are vague and unclear and Defendants lack knowledge or information sufficient to

form a belief as to their truth.

6.      Following YERVOY®'s approval for metastatic melanoma, BMS continued to
conduct extensive research and development in the field of cancer immunotherapy, leading to the
FDA awarding BMS approvals for the use of YERVOY® to treat several additional cancer
indications.  For example, on October 1, 2015, the FDA approved YERVOY® in combination
with nivolumab (OPDIVO®), BMS's anti-PD-1 antibody, for the treatment of metastatic
melanoma, making it the first-ever combination immunotherapy treatment to be approved by the
FDA.  Currently, YERVOY® has been approved by the FDA to treat melanoma, renal cell
carcinoma, colorectal cancer, hepatocellular carcinoma, non-small cell lung cancer (NSCLC),
malignant pleural mesothelioma, and esophageal cancer, either alone or in combination with
OPDIVO®.

  **ANSWER:   ADMITTED** that according to its prescribing information, YERVOY® is

indicated for the treatment of certain types of melanoma, renal cell carcinoma, colorectal

cancer, hepatocellular carcinoma, non-small cell lung cancer (NSCLC), malignant pleural

mesothelioma, and esophageal cancer.  **ADMITTED** that, upon information and belief, in

October 2015 the FDA "granted an accelerated approval to the combination of Opdivo

(nivolumab) and Yervoy (ipilimumab) as a treatment for patients with BRAF V600 wild-type

unresectable or metastatic melanoma."  **ADMITTED** that according to its prescribing

information, YERVOY® is used in some circumstances in combination with nivolumab to treat

certain types of  melanoma, renal cell carcinoma, colorectal cancer, hepatocellular carcinoma,

non-small cell lung cancer (NSCLC), malignant pleural mesothelioma, and esophageal cancer.

The remaining allegations in paragraph 6 of the Complaint are **DENIED** because they are

vague and unclear and Defendants lack knowledge or information sufficient to form a belief as

to their truth.

7.      In addition, BMS continues worldwide development of YERVOY® for the
treatment of a broad spectrum of cancers and is engaged in clinical testing with a variety of
combination therapies.  On May 26, 2020, the FDA approved the combination of YERVOY®

plus OPDIVO® and platinum-based chemotherapy as first-line treatment for patients with metastatic or recurrent NSCLC.  The treatment was the first combination of multiple immunotherapies and chemotherapy to gain approval by the FDA.

      **ANSWER:  ADMITTED** that, upon information and belief, in May 2020 the FDA approved "the combination of nivolumab (OPDIVO, Bristol-Myers Squibb Co.) plus ipilimumab (YERVOY, Bristol-Myers Squibb Co.) and 2 cycles of platinum-doublet chemotherapy as first-line treatment for patients with metastatic or recurrent non-small cell lung cancer (NSCLC), with no epidermal growth factor receptor (EGFR) or anaplastic lymphoma kinase (ALK) genomic tumor aberrations."[1]  The remaining allegations in paragraph 7 of the Complaint are **DENIED** because they are vague and unclear and Defendants lack knowledge or information sufficient to form a belief as to their truth.

      8.    Defendants are exploiting BMS's inventions and willfully infringing BMS's intellectual property rights by marketing an infringing anti-CTLA-4 antibody product, IMJUDO® (tremelimumab-actl), for use in methods for treating cancer, without having first obtained permission from BMS or a license to BMS's intellectual property rights.

      **ANSWER:  ADMITTED** that according to its prescribing information, IMJUDO® (tremelimumab-actl) "is a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated" "in combination with durvalumab for the treatment of adult patients with unresectable hepatocellular carcinoma," and "in combination with durvalumab and platinum-based chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer (NSCLC)."  Otherwise, **DENIED**.

      9.    Since BMS and Defendants are direct competitors in the field of immunotherapy, BMS has suffered, and continues to suffer, substantial damages, including lost profits, as a result of Defendants' willful infringement.

---

[1] https://www.fda.gov/drugs/resources-information-approved-drugs/fda-approves-nivolumab-plus-ipilimumab-and-chemotherapy-first-line-treatment-metastatic-nsclc

ME1 44202838v.1

**ANSWER:**   The allegations in paragraph 9 of the Complaint are vague, unclear, and fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY** those allegations.

## PARTIES

10.     Bristol-Myers Squibb Co. is a corporation organized under the laws of the state of Delaware, with a principal place of business in New Jersey.  E. R. Squibb & Sons, L.L.C., is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business in New Jersey.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and therefore **DENY** those allegations.

11.     On information and belief, AstraZeneca Pharmaceuticals LP is a limited partnership organized under the laws of the state of Delaware, with its principal place of business at 1800 Concord Pike, Wilmington, Delaware 19803.

**ANSWER:**   **ADMITTED** that AstraZeneca Pharmaceuticals LP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business at 800 Concord Pike, Wilmington, Delaware 19803.

12.     On information and belief, AstraZeneca AB is a private limited company organized under the laws of Sweden, with its registered office at Södertälje, Sweden SE-15185.

**ANSWER:**   **ADMITTED** that AstraZeneca AB is a private limited company organized under the laws of Sweden, with its registered office at Södertälje, Sweden SE-15185.

13.     AstraZeneca Pharmaceuticals LP and AstraZeneca AB are in the business of manufacturing, marketing, distributing, offering for sale, and selling drug products that are distributed and sold throughout the United States, including in Delaware.

      **ANSWER:**  The allegations of paragraph 13 of the Complaint are vague, unclear, and

fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant

AstraZeneca AB, and are therefore **DENIED**.

      14.    AstraZeneca Pharmaceuticals LP and AstraZeneca AB are sophisticated
pharmaceutical companies.  On information and belief, Defendants rely on and actively seek
patent protection for their products.  On information and belief, Defendants regularly enforce
their patents and other intellectual property rights.  This lawsuit seeks to have Defendants respect
BMS's patent rights just as Defendants expect third parties to respect their patent rights.

      **ANSWER:**  The allegations of paragraph 14 of the Complaint are vague, unclear, and

fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant

AstraZeneca AB, and are therefore **DENIED**.

**JURISDICTION AND VENUE**

      15.    This is an action for patent infringement arising under the Patent Laws of the
United States, 35 U.S.C. §§ 271 *et seq.*, including an action seeking a declaratory judgment
pursuant to 28 U.S.C. §§ 2201-2202.

      **ANSWER:**  The allegations of paragraph 15 of the Complaint set forth legal

conclusions to which no response is required.  To the extent that a response is required,

**DENIED**.

      16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§§ 1331 and 1338(a).

      **ANSWER:**  The allegations of paragraph 16 of the Complaint set forth legal

conclusions to which no response is required.  To the extent that a response is required,

**DENIED**.

      17.    This Court has personal jurisdiction over AstraZeneca Pharmaceuticals LP
because it is a Delaware entity located in Delaware.

      **ANSWER:**  **ADMITTED** that AstraZeneca Pharmaceuticals LP is a Delaware entity

with its principal place of business located in Delaware.  To the extent any other response is

required, Defendant AstraZeneca Pharmaceuticals LP does not contest that this Court has

personal jurisdiction over it for purposes of this Action.

18.　　This Court has jurisdiction over AstraZeneca AB, *inter alia*, because its subsidiary and agent, AstraZeneca Pharmaceuticals LP, is incorporated in Delaware and, upon information and belief, markets and sells IMJUDO® in Delaware as AstraZeneca AB's authorized agent and under AstraZeneca AB's direction and control.

**ANSWER:** **ADMITTED** that AstraZeneca Pharmaceuticals LP is a Delaware entity

and markets and sells IMJUDO® with the authorization of AstraZeneca AB. Otherwise,

**DENIED**, with the exception that Defendant AstraZeneca AB does not contest that this Court

has personal jurisdiction over it for purposes of this Action.

19.　　On information and belief, AstraZeneca Pharmaceuticals LP and AstraZeneca AB are engaged in a single business activity of biopharmaceuticals and are not separated into multiple operating segments. On information and belief, AstraZeneca's business activities take place (and are managed) globally on a highly integrated basis and are not managed separately.

**ANSWER:** The allegations of paragraph 19 of the Complaint are vague, unclear, and

are irrelevant given that neither Defendant AstraZeneca Pharmaceuticals LP nor Defendant

AstraZeneca AB contests personal jurisdiction in this Action. To the extent any other response

is required, Defendants are unable to form a belief as to the truth of these allegations and

therefore **DENY** them.

20.　　On information and belief, AstraZeneca Pharmaceuticals LP and AstraZeneca AB have consented to jurisdiction in Delaware in one or more prior cases arising out of the manufacture, use, offer for sale, sale and/or importation of pharmaceutical products, including cases Defendants initiated as the plaintiffs.

**ANSWER:** The allegations of paragraph 20 of the Complaint are vague and unclear,

include legal conclusions to which no response is required, and are irrelevant given that neither

Defendant AstraZeneca Pharmaceuticals LP nor Defendant AstraZeneca AB contests personal

jurisdiction in this Action. To the extent a response is required, Defendants are unable to form

a belief as to the truth of these allegations and therefore **DENY** them.

21.     Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b).

ANSWER:   The allegations of paragraph 21 of the Complaint set forth legal

conclusions to which no response is required.  To the extent a response is required, Defendants

do not contest that venue is proper in this Action.

## THE PATENTS-IN-SUIT

22.     On April 26, 2016, the USPTO duly and legally issued U.S. Patent No. 9,320,811
("the '811 patent") titled "Combination of Anti-CTLA4 Antibody with Diverse Therapeutic
Regimens for the Synergistic Treatment of Proliferative Diseases."  A true and correct copy of
the '811 patent is attached hereto as Exhibit 1.  The '811 patent is assigned to Bristol-Myers
Squibb Co.

ANSWER:   **DENIED** that the '811 patent was duly and legally issued.  **ADMITTED**

that, on its face, the '811 patent indicates that it issued on April 26, 2016.  **ADMITTED** that a

copy of the '811 patent is attached to the Complaint as Exhibit 1.  **ADMITTED** that, on its

face, the '811 patent lists Bristol-Myers Squibb Company as the assignee.

23.     The '811 patent issued from U.S. Application No. 14/168,465, filed January 30,
2014, which is a divisional of U.S. Application No. 13/384,900, filed January 19, 2012 (now
U.S. Patent No. 8,685,394), which is a national stage entry of PCT Application No.
PCT/US2009/062519, filed October 29, 2009, which claims the benefit of U.S. Provisional
Patent Application No. 61/085,466, filed August 1, 2008 and U.S. Provisional Patent Application
No. 61/226,910, filed July 20, 2009.

ANSWER:   **ADMITTED** that, on its face, the '811 patent indicates that it issued from

U.S. Application No. 14/168,465, filed January 30, 2014, which is a divisional of U.S.

Application No. 13/384,900, filed January 19, 2012 (now U.S. Patent No. 8,685,394), which is

a national stage entry of PCT Application No. PCT/US2009/062519, filed October 29, 2009,

which claims the benefit of U.S. Provisional Patent Application No. 61/085,466, filed August 1,

2008 and U.S. Provisional Patent Application No. 61/226,910, filed July 20, 2009.  Otherwise,

**DENIED**.

24.     The claims of the '811 patent are generally directed to methods for the treatment

of cancer by administering an anti-CTLA-4 antibody in combination with chemotherapy drug gemcitabine.  By way of example, claim 1 of the '811 patent is:

> A method for the treatment of cancer, comprising the concurrent administration to a mammal in need thereof a synergistic, therapeutically effective amount of an anti-CTLA-4 antibody with 2′-deoxy-2′,2′-difluorocytidine monohydrochloride (β-isomer), or a pharmaceutically acceptable salt, solvate, or hydrate thereof.[2]

**ANSWER:   ADMITTED** that paragraph 24 of the Complaint accurately reproduces

the text of claim 1 of the '811 patent.  The remaining allegations in paragraph 24 of the

Complaint are **DENIED** because they contain legal conclusions to which the law requires no

response, are vague and unclear, and Defendants are unable to form a belief as to their truth.

25.     On March 1, 2016, the USPTO duly and legally issued U.S. Patent No. 9,273,135 ("the '135 patent") titled "Human Monoclonal Antibodies to Programmed Death Ligand 1 (PD-L1)."  A true and correct copy of the '135 patent is attached hereto as Exhibit 2.  The '135 patent is assigned to E. R. Squibb & Sons, L.L.C.

**ANSWER:   DENIED** that the '135 patent was duly and legally issued.  **ADMITTED**

that, on its face, the '135 patent indicates that it issued on March 1, 2016.  **ADMITTED** that a

copy of the '135 patent is attached to the Complaint as Exhibit 2.  **ADMITTED** that, on its

face, the '135 patent lists E.R. Squibb & Sons, L.L.C. as the assignee.

26.     The '135 patent issued from U.S. Application No. 14/796,956, filed July 10, 2015, which is a divisional of U.S. Application No. 13/746,773, filed January 22, 2013 (now U.S. Pat. No. 9,102,725), which is a divisional application of U.S. Application No. 13/091,936, filed April 21, 2011 (now U.S. Pat. No. 8,383,796), which is a divisional application of U.S. Application No. 11/917,727, filed June 9, 2008 (now U.S. Pat. No. 7,943,743), which is a national stage entry of PCT Application No. PCT/US2006/026046, filed June 30, 2006, which claims the benefit of U.S. Provisional Patent Application No. 60/696,426, filed July 1, 2005.

**ANSWER:   ADMITTED** that, on its face, the '135 patent indicates that it issued from

U.S. Application No. 14/796,956, filed July 10, 2015, which is a divisional of U.S. Application

No. 13/746,773, filed January 22, 2013 (now U.S. Pat. No. 9,102,725), which is a divisional

---

[2] 2′-deoxy-2′,2′-difluorocytidine monohydrochloride (β-isomer) is the chemical name of gemcitabine hydrochloride.

application of U.S. Application No. 13/091,936, filed April 21, 2011 (now U.S. Pat. No.

8,383,796), which is a divisional application of U.S. Application No. 11/917,727, filed June 9,

2008 (now U.S. Pat. No. 7,943,743), which is a national stage entry of PCT Application No.

PCT/US2006/026046, filed June 30, 2006, which claims the benefit of U.S. Provisional Patent

Application No. 60/696,426, filed July 1, 2005.  Otherwise, **DENIED**.

27.     The claims of the '135 patent are generally directed to methods for enhancing an
immune response in a subject by administering an anti-PD-L1 monoclonal antibody in
combination with an anti-CTLA-4 antibody, where the anti-PD-L1 antibody cross-competes for
binding to PD-L1 with a reference antibody.  By way of example, claim 1 of the '135 patent is:

A method for enhancing an immune response in a subject comprising
administering to the subject a combination of an anti-PD-L1 monoclonal antibody
or an antigen-binding portion thereof and an anti-CTLA-4 monoclonal antibody or
an antigen-binding portion thereof, wherein the anti-PD-L1 monoclonal antibody or
antigen-binding portion thereof cross-competes for binding to PD-L1 with a
reference antibody comprising:
(a) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:1 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:11;
(b) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:2 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:12;
(c) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:3 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:13;
(d) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:4 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:14;
(e) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:5 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:15;
(f) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:6 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:16;
(g) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:7 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:17;
(h) a heavy chain variable region comprising amino acids having the
sequence set forth in SEQ ID NO:8 and a light chain variable region
comprising amino acids having the sequence set forth in SEQ ID NO:18;
(i) a heavy chain variable region comprising amino acids having the

sequence set forth in SEQ ID NO:9 and a light chain variable region comprising amino acids having the sequence set forth in SEQ ID NO:19; or

(j) a heavy chain variable region comprising amino acids having the sequence set forth in SEQ ID NO:10 and a light chain variable region comprising amino acids having the sequence set forth in SEQ ID NO:20, and

wherein enhancing the immune response results in inhibition of growth of tumor cells in the subject.

**ANSWER:   ADMITTED** that paragraph 27 of the Complaint accurately reproduces the text of claim 1 of the '135 patent.  The remaining allegations in paragraph 27 of the Complaint are **DENIED** because they contain legal conclusions to which the law requires no response, are vague and unclear, and Defendants are unable to form a belief as to their truth.

## ASTRAZENECA'S IMJUDO® PRODUCT

28.     AstraZeneca AB is the holder of Biologics License Application ("BLA") No. 761289 for IMJUDO® (tremelimumab-actl).  According to its prescribing information, IMJUDO® contains an anti-CTLA-4 blocking antibody named tremelimumab-actl that is indicated for treating patients with specific types of cancer.  The FDA-approved label for IMJUDO® indicates that IMJUDO® is manufactured for AstraZeneca Pharmaceuticals LP by AstraZeneca AB.  On information and belief, AstraZeneca Pharmaceuticals LP is marketing, using, distributing, offering for sale, selling, and importing IMJUDO® in the United States as AstraZeneca AB's authorized agent.

**ANSWER:   ADMITTED** that AstraZeneca AB is the holder of Biologics License Application ("BLA") No. 761289 for IMJUDO® (tremelimumab-actl).  **ADMITTED** that according to its prescribing information, IMJUDO® "is a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated" "in combination with durvalumab for the treatment of adult patients with unresectable hepatocellular carcinoma," and "in combination with durvalumab and platinum-based chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer (NSCLC)."  **ADMITTED** that the FDA-approved labeling for IMJUDO® indicates that IMJUDO® is manufactured for AstraZeneca Pharmaceuticals LP by AstraZeneca AB.  **ADMITTED** that AstraZeneca Pharmaceuticals LP

markets, distributes, offers for sale, and/or sells IMFINZI in the United States with the

authorization of AstraZeneca AB.  Otherwise, **DENIED**.

29.     On October 21, 2022, the FDA approved IMJUDO® in combination with
durvalumab (IMFINZI®) as a treatment for adult patients with unresectable hepatocellular
carcinoma (uHCC).[3]  The prescribing information that Defendants provided and that the FDA
approved in October 2022 instructed that for patients weighing 30 kg and more, IMJUDO® is to
be administered as an intravenous infusion over 60 minutes as a single dose of 300 mg in
combination with durvalumab 1,500 mg at Cycle 1/Day 1, followed by durvalumab as a single
agent every 4 weeks.  For patients weighing less than 30 kg, 4mg/kg of IMJUDO® is to be
administered as an intravenous infusion over 60 minutes as a single dose in combination with
durvalumab 20 mg/kg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4 weeks
for the treatment of uHCC.[4]

ANSWER:   ADMITTED that AstraZeneca AB received approval from FDA in 2022

to market and sell IMJUDO®, in combination with durvalumab, as a treatment for certain

patients with unresectable hepatocellular carcinoma.  **ADMITTED** that, with respect to certain

indications, the prescribing information for IMJUDO® recites that IMJUDO® is to be

administered as an intravenous infusion over 60 minutes after dilution, for patients that weigh

30 kg or more, of 300 mg of IMJUDO® as a single dose in combination with durvalumab 1,500

mg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4 weeks.  **ADMITTED**

that, with respect to certain indications, the prescribing information for IMJUDO® recites that

IMJUDO® is to be administered as an intravenous infusion over 60 minutes after dilution, for

patients that weigh less than 30 kg, of 4 mg/kg of IMJUDO® as a single dose in combination

with durvalumab 20 mg/kg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4

weeks.  Otherwise, **DENIED**.

---

[3] https://www.fda.gov/drugs/resources-information-approved-drugs/fda-approves-tremelimumabcombination-durvalumab-unresectable-hepatocellularcarcinoma#:~:
text=FDA%20approves%20tremelimumab%20in%20combination%20with%20durvalumab%20for%
20unresectable%20hepatocellular%20carcinoma,-
Share&text=On%20October%2021%2C%202022%2C%20the,unresectable%20hepatocellular%20carcinoma%20(uHCC).
[4] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/761270s000lbl.pdf.

ME1 44202838v.1

30.     On information and belief Defendants began marketing IMJUDO® for the treatment of uHCC according to the prescribing information in the United States on October 21, 2022.[5]

**ANSWER:   ADMITTED** that AstraZeneca Pharmaceuticals LP began marketing

IMJUDO® for the treatment of uHCC according to the prescribing information in the United

States in October 2022.  Otherwise, **DENIED**.

31.     On November 10, 2022, the FDA approved IMJUDO® in combination with durvalumab and platinum-based chemotherapy for adult patients with metastatic NSCLC with no sensitizing epidermal growth factor receptor (EGFR) mutation or anaplastic lymphoma kinase (ALK) genomic tumor aberrations.[6]  The prescribing information that Defendants provided and the FDA approved for the use of IMJUDO® to treat NSCLC indicates that IMJUDO® is to be administered as an intravenous infusion over 60 minutes as a single dose of 75 mg every 3 weeks in combination with durvalumab 1,500 mg and platinum-based therapy for 4 cycles, followed by durvalumab 1,500 mg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks and a then a fifth dose of IMJUDO® 75 mg in combination with durvalumab.  Alternatively, IMJUDO® is to be administered as an intravenous infusion over 60 minutes at 1 mg/kg every 3 weeks in combination with durvalumab 20 mg/kg and platinum-based chemotherapy for 4 cycles, and then durvalumab 20 mg/kg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks and then a fifth dose of IMJUDO® 1 mg/kg in combination with durvalumab for the treatment of NSCLC.[7]

**ANSWER:   ADMITTED** that on November 10, 2022, the FDA approved IMJUDO®

in combination with durvalumab and platinum-based chemotherapy for adult patients with

metastatic NSCLC with no sensitizing epidermal growth factor receptor (EGFR) mutation or

anaplastic lymphoma kinase (ALK) genomic tumor aberrations.  **ADMITTED** that, with

respect to certain indications, the prescribing information for IMJUDO® recites that

IMJUDO® is to be administered as an intravenous infusion over 60 minutes after dilution, for

patients that weigh 30 kg or more, of 75 mg of IMJUDO® every 3 weeks in combination with

durvalumab 1,500 mg and platinum-based chemotherapy for 4 cycles, and then administer

---

[5] https://www.imfinzihcp.com/hepatocellular-carcinoma.html
[6] https://www.fda.gov/drugs/resources-information-approved-drugs/fda-approves-tremelimumabcombination-durvalumab-and-platinum-based-chemotherapy-metastatic-non
[7] https://www.accessdata.fda.gov/drugsatfda_docs/label/2022/761270s000lbl.pdf

ME1 44202838v.1

durvalumab 1,500 mg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks, and a fifth dose of IMJUDO® 75 mg in combination with durvalumab dose 6 at week 16.  **ADMITTED** that, with respect to certain indications, the prescribing information for IMJUDO® recites that IMJUDO® is to be administered as an intravenous infusion over 60 minutes after dilution, for patients that weigh less than 30 kg, of 1 mg/kg of IMJUDO® every 3 weeks in combination with durvalumab 20 mg/kg and platinum-based chemotherapy for 4 cycles, and then administer durvalumab 20 mg/kg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks, and a fifth dose of IMJUDO® 1 mg/kg in combination with durvalumab dose 6 at week 16.  Otherwise, **DENIED**.

32.     On information and belief, Defendants began marketing IMJUDO® for the treatment of NSCLC in the United States on November 10, 2022.[8]

**ANSWER:     ADMITTED** that AstraZeneca Pharmaceuticals LP began marketing IMJUDO® for the treatment of NSCLC according to the prescribing information in the United States in November 2022.  Otherwise, **DENIED**.

33.     The active ingredient in AstraZeneca's IMJUDO® product is the anti-CTLA-4 antibody tremelimumab-actl.  Tremelimumab is a human IgG2 monoclonal antibody that binds to human CTLA-4.

**ANSWER:   ADMITTED** that the active ingredient in AstraZeneca's IMJUDO® product is the anti-CTLA-4 antibody tremelimumab-actl.  **ADMITTED** that as stated in the IMJUDO® prescribing information, "Tremelimumab-actl [is] a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking human IgG2 monoclonal antibody."  Otherwise, **DENIED**.

## The Use of IMJUDO® Infringes the '811 Patent

---

[8] https://www.imfinzihcp.com/?source=imz_n_h_4799&umedium=cpc&uadpub=google&ucampaign=2022 imfinzihcpbtcbranded_alone_hcp&ucreative=branded_alone_ex&uplace=imfinzi&outcome=hcp&cmpid=1&gclid= EAIaIQobChMIgIPck5zk-wIVlsDICh1SRAdHEAAYASAAEgLXYvD_BwE&gclsrc=aw.ds

ME1 44202838v.1

34.     On information and belief, Defendants have manufactured, distributed, used, offered for sale, sold, and/or imported in the United States the IMJUDO® antibody product to be prescribed and used for the treatment cancer, including NSCLC.

ANSWER:   ADMITTED that AstraZeneca Pharmaceuticals LP is currently

manufacturing, distributing, offering for sale, and/or selling the IMJUDO® antibody product in

the United States to be prescribed and used for the treatment of certain types of cancer,

including but not limited to metastatic NSCLC, according to the IMJUDO® prescribing

information.  Otherwise, **DENIED**.

35.     As described above, and according to IMJUDO®'s prescribing information, IMJUDO® is an anti-CTLA-4 antibody used for treating cancer in patients in need of such treatment.  IMJUDO® is specifically indicated for the treatment of NSCLC.  IMJUDO® is specifically indicated for use in combination with durvalumab and platinum-based chemotherapy in patients with NSCLC.  According to IMJUDO®'s prescribing information, it is indicated for use in combination with durvalumab and platinum-based chemotherapy in patients with NSCLC, where platinum-based chemotherapy regimen for patients with squamous NSCLC includes carboplatin and gemcitabine or cisplatin and gemcitabine.

ANSWER:   ADMITTED that as stated in the IMJUDO® prescribing information,

"[t]remelimumab-actl is a monoclonal antibody that binds to CTLA-4 and blocks the interaction

with its ligands CD80 and CD86, releasing CTLA-4-mediated inhibition of T-cell activation."

**ADMITTED** that as stated in the IMJUDO® prescribing information, "is a cytotoxic T-

lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated… in combination with

durvalumab and platinum-based chemotherapy for the treatment of adult patients with

metastatic non-small cell lung cancer (NSCLC) with no sensitizing epidermal growth factor

receptor (EGFR) mutation or anaplastic lymphoma kinase (ALK) genomic tumor aberrations."

Otherwise, **DENIED**.

36.     As described above, and according to its prescribing information, IMJUDO® is administered as an intravenous infusion over 60 minutes as a single dose of 75 mg every 3 weeks in combination with durvalumab 1,500 mg and platinum-based therapy for 4 cycles, followed by durvalumab 1,500 mg every 4 weeks as a single agent and then a fifth dose of IMJUDO® 75 mg in combination with durvalumab.  Alternatively, IMJUDO® is administered as an intravenous

infusion over 60 minutes at 1 mg/kg every 3 weeks in combination with durvalumab 20 mg/kg and platinum-based chemotherapy for 4 cycles, and then durvalumab 20 mg/kg every 4 weeks as a single agent and then a fifth dose of IMJUDO® 1 mg/kg in combination with durvalumab for the treatment of squamous NSCLC, where platinum-based chemotherapy regimen includes carboplatin and gemcitabine or cisplatin and gemcitabine.

**ANSWER:   ADMITTED** that, with respect to certain indications, the prescribing

information for IMJUDO® recites that IMJUDO® is to be administered as an intravenous

infusion over 60 minutes after dilution, for patients that weigh 30 kg or more, of 75 mg of

IMJUDO® every 3 weeks in combination with durvalumab 1,500 mg and platinum-based

chemotherapy for 4 cycles, and then administer durvalumab 1,500 mg every 4 weeks as a single

agent with histology-based pemetrexed therapy every 4 weeks, and a fifth dose of IMJUDO®

75 mg in combination with durvalumab dose 6 at week 16.  **ADMITTED** that, with respect to

certain indications, the prescribing information for IMJUDO® recites that IMJUDO® is to be

administered as an intravenous infusion over 60 minutes after dilution, for patients that weigh

less than 30 kg, of 1 mg/kg of IMJUDO® every 3 weeks in combination with durvalumab 20

mg/kg and platinum-based chemotherapy for 4 cycles, and then administer durvalumab 20

mg/kg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks,

and a fifth dose of IMJUDO® 1 mg/kg in combination with durvalumab dose 6 at week 16.

Otherwise, **DENIED**.

37.     According to its prescribing information, IMJUDO® was administered in combination with durvalumab plus platinum and gemcitabine chemotherapy to patients with squamous NSCLC on the same day.  In the POSEIDON study, patients received IMJUDO® 75 mg (or 10 mg/kg for patients < 30 kg) in combination with durvalumab 1,500 mg and histology-based platinum chemotherapy every 3 weeks for 4 cycles, followed by durvalumab 1,500 mg every 4 weeks as a single agent.  A fifth dose of IMJUDO® 75 mg (or 10 mg/kg for patients < 30 kg) was given at week 16 in combination with durvalumab dose 6.  An addition to IMJUDO® and durvalumab, patients with squamous NSCLC received gemcitabine 1,000 or 1,250 mg/m2 on Days 1 and 8 with cisplatin 75 mg/m2 or carboplatin AUC 5-6 on Day 1 every 3 weeks for 4 cycles.

ME1 44202838v.1

**ANSWER:   ADMITTED** that according to the IMJUDO® prescribing information, "[p]atients received IMJUDO and durvalumab in combination with [a] platinum-based chemotherapy regimen" depending on the type of cancer.  **ADMITTED** that according to the IMJUDO® prescribing information, patients with squamous NSCLC "received IMJUDO and durvalumab in combination with…Gemcitabine 1,000 or 1,250 mg/m2 on Days 1 and 8 with cisplatin 75 mg/m2 or carboplatin AUC 5-6 on Day 1 every 3 weeks for 4 cycles," and patients with non-squamous and squamous NSCLC "received IMJUDO and durvalumab in combination with… Nab-paclitaxel 100 mg/m2 on Days 1, 8, and 15 with carboplatin AUC 5-6 on Day 1 every 3 weeks for 4 cycles."  **ADMITTED** that according to the IMJUDO® prescribing information, "[t]he safety of IMJUDO in combination with durvalumab and platinum-based chemotherapy in patients with metastatic NSCLC was evaluated in POSEIDON (NCT03164616), a randomized, open-label, multicenter, active-controlled trial. A total of 330 patients received IMJUDO ($\geq$ 30 kg body weight received 75 mg and $\leq$ 30kg body weight received 1mg/kg) in combination with durvalumab 1,500 mg and histology-based platinum chemotherapy regimens."  Otherwise, **DENIED**.

38.     According to IMJUDO®'s prescribing information, patients are administered durvalumab followed by platinum-containing chemotherapy on the same day they receive IMJUDO® for the treatment of NSCLC.

**ANSWER:   ADMITTED** that according to the IMJUDO® prescribing information, for some types of cancer, the order of infusions of certain combination regimens recites that in a regimen of "IMJUDO in Combination with Durvalumab and Platinum-based Chemotherapy," one would "[i]nfuse IMJUDO first, followed by durvalumab and then platinum-based chemotherapy on the day of dosing."  Otherwise, **DENIED**.

39.     On information and belief, IMJUDO® has been used according to the instructions in its prescribing information.  The use of IMJUDO® according to the instructions

in its prescribing information infringes at least claims 1-2, 4-5, 7-9, and 13-16 of the '811 patent.

**ANSWER:   DENIED** that use of IMJUDO® infringes at least claims 1-2, 4-5, 7-9,

and 13-16 of the '811 patent.  The remaining allegations in paragraph 39 of the Complaint are

vague and unclear; Defendants are unable to form a belief as to the truth of those allegations

and therefore **DENY** them.

40.     On information and belief, Defendants have had knowledge of the '811 patent
since the '811 patent issued because U.S. Publication 2010/0098701, the publication of U.S.
Patent Application No. 12/462,168 ("the '168 Application"), which claims priority to the same
provisional applications as the '811 patent and lists the same named inventor was identified
during prosecution of Defendants' own patent application. U.S. 2010/0098701 includes a
specification and claims that are very similar to those of the '811 patent.  Examples included in
the U.S. 2010/0098701 specification disclose a synergistic benefit of combining gemcitabine
with an anti-CTLA-4 antibody for the treatment of lung carcinoma.  On February 12, 2019, U.S.
2010/0098701 was identified by the examiner as relevant to all claims in AstraZeneca's
subsidiary MedImmune's U.S. Application No. 15/525,804.  On information and belief,
Defendants were aware of the MedImmune patent applications, and the citations to the BMS
patents, because, for example, they related to Defendants' product IMJUDO®.

**ANSWER:**   The allegations in paragraph 40 of the Complaint are vague, unclear, and

fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant

AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY**

those allegations.

41.     On information and belief, Defendants have known about the '811 patent since at
least as early as December 2021 when Defendants approached BMS about licensing BMS's
CTLA-4 patent estate, but in any event, no later than the date they received a copy of this
complaint.  Defendants and BMS are direct competitors in the immunotherapy field, and more
specifically, in the CTLA-4 antibody field.  Defendants market their anti-CTLA-4 antibody
tremelimumab under the name IMJUDO® for the treatment of uHCC and NSCLC.  BMS
markets the anti-CTLA-4 antibody ipilumumab under the name YERVOY® for the treatment of
hepatocellular cancer and NSCLC.  On information and belief, Defendants began marketing
IMJUDO® on October 21, 2022.  On information and belief, Defendants actively monitor their
competitors' patent portfolios that could cover the IMJUDO® product.

**ANSWER:   ADMITTED** that according to its prescribing information, IMJUDO®

(tremelimumab-actl) "is a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking

ME1 44202838v.1

antibody indicated" "in combination with durvalumab for the treatment of adult patients with unresectable hepatocellular carcinoma," and "in combination with durvalumab and platinum-based chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer (NSCLC)." **ADMITTED** that according to its prescribing information, YERVOY® (ipilimumab) is a human cytotoxic T-lymphocyte antigen 4 (CTLA-4) blocking antibody indicated for some cancer treatments. **ADMITTED** that as shown by the prescribing information for IMJUDO®, AstraZeneca AB received approval from the FDA in 2022 to market and sell IMJUDO®, in combination with durvalumab, as a treatment for certain patients with unresectable hepatocellular carcinoma. **ADMITTED** that as shown by the prescribing information for IMJUDO®, AstraZeneca AB received approval from the FDA in 2022 to market and sell IMJUDO®, in combination with durvalumab and platinum-based chemotherapy, as a treatment for certain patients with metastatic non-small cell lung cancer (NSCLC) with no sensitizing epidermal growth factor receptor (EGFR) mutation or anaplastic lymphoma kinase (ALK) genomic tumor aberrations. The remaining allegations in paragraph 41 of the Complaint are vague, unclear, and fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca AB. Defendants are unable to form a belief as to their truth and therefore **DENY** those allegations.

42. Defendants have had knowledge of the '811 patent since the '811 patent issued because AstraZeneca is a large company that monitors its competitors' patent portfolios for patents that cover IMJUDO®. On information and belief, Defendants monitored BMS's patent portfolio because in or around December 2021, Defendants approached BMS about licensing one or more patents in BMS's CTLA-4 patent portfolio. On information and belief, at least in connection with that approach by Defendants to BMS to license BMS's CTLA-4 patent portfolio, Defendants investigated BMS's portfolio of CTLA-4-related patents and patent applications, which included the '811 patent at that point. Therefore, Defendants would have had knowledge of the '811 patent since at least that time. At various points in 2022, BMS and Defendants again discussed licensing BMS's CTLA-4 patent estate.

**ANSWER:**   The allegations in paragraph 42 of the Complaint are vague, unclear, and fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY** those allegations.

43.     In the absence of actual knowledge, Defendants have at least been willfully blind to the existence of the '811 patent since the '811 patent issued.  Defendants own or control numerous patents covering IMJUDO®.  Defendants knew that BMS owned or licensed patents covering anti-CTLA-4 antibodies, and their use, since at least December 2021 based on previous licensing discussions between the parties.  Defendants subjectively believed there was a high probability that the '811 patent existed.  Additionally, BMS and Defendants are actively involved in patent litigation over Defendants' anti-PD-L1 antibody, IMFINZI®.  IMJUDO® and IMFINZI® are both immunotherapy products used to treat cancer.  IMJUDO® has only been approved for use in combination with IMFINZI® (durvalumab).  At least one of the patents asserted in the IMFINZI® litigation includes claims that describe administering anti-CTLA-4 antibodies in combination with anti-PD-L1 antibodies.  Thus, as a result of the IMFINZI® litigation, Defendants were on notice that BMS owns patents that cover methods of treatment using anti-CTLA-4 antibodies in combination with anti-PD-L1 antibodies, i.e., the combination for which IMJUDO® is approved.  To the extent Defendants have not investigated the full scope of BMS's anti-CTLA-4 patent portfolio, including whether BMS owns patents that may cover IMJUDO® or its use in methods of treating cancer, they have been willfully blind to these patents.

**ANSWER:**   The allegations in paragraph 43 of the Complaint are vague, unclear, and fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY** those allegations.

44.     Defendants also had knowledge of other patents owned/licensed by BMS that relate to the use of an anti-CTLA-4 antibody.  AstraZeneca is a sophisticated company and, on information and belief, monitors the patent estates of its competitors for patents that could cover the use of IMJUDO®, particularly competitors, like BMS, whom Defendants have approached about licensing patents that cover IMJUDO®.  If Defendants did not have actual knowledge of the '811 patent, it is because Defendants took deliberate actions to avoid learning specifically about the '811 patent.  If Defendants did not have actual knowledge of the existence of the '811 patent, it is because Defendants were willfully blind to the existence of the '811 patent.

**ANSWER:   DENIED** that Astra Zeneca took deliberate actions to avoid learning about the '811 patent.  **DENIED** that AstraZeneca was willfully blind to the existence of the '811

patent.  The remaining allegations in paragraph 44 of the Complaint are vague, unclear, and fail

to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca

AB.  Defendants are unable to form a belief as to their truth and therefore **DENY** those

allegations.

45.     Defendants have known that the use of IMJUDO® in patients to treat cancer will infringe and does infringe at least claims 1-2, 4-5, 7-9, and 13-16 of the '811 patent since at least as early as 2021, but in any event, no later than the date they received a copy of this complaint. IMJUDO® is sold in a highly regulated market and Defendants provided detailed prescribing information to users about how to administer and use IMJUDO®.  As detailed above, limitations of the claims of the '811 patent are found directly in IMJUDO®'s prescribing information. Accordingly, once Defendants knew of the '811 patent, Defendants knew that the use of IMJUDO® according to its prescribing information would infringe the '811 patent.

        **ANSWER:   DENIED** that IMJUDO® infringes at least claims 1-2, 4-5, 7-9, and 13-16

of the '811 patent.  The remaining allegations in paragraph 45 of the Complaint are vague,

unclear, and fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and

Defendant AstraZeneca AB.  Defendants are unable to form a belief as to their truth and

therefore **DENY** those allegations.

46.     If Defendants did not have actual knowledge that the use of IMJUDO® in patients to treat cancer infringes at least claims 1-2, 4-5, 7-9, and 13-16 of the '811 patent, then Defendants were willfully blind to that fact.  Defendants had actual knowledge of the '811 patent or were willfully blind to the existence of the '811 patent.  AstraZeneca is a sophisticated company and upon learning of a patent that covers the use of an anti-CTLA-4 antibody according to the treatment regimen in IMJUDO®'s prescribing information, Defendants subjectively believed that there was a high probability the use of IMJUDO® would infringe the '811 patent.  Based on the similarity between the '811 patent's claims and IMJUDO®'s prescribing information, the only way that Defendants would not know that the use of IMJUDO® infringed the '811 patent would be because Defendants took deliberate action to avoid learning that the use of IMJUDO® infringed the '811 patent.

        **ANSWER:   DENIED**.

47.     Defendants have contributed, and continue to contribute, to the infringement of at least claims 1-2, 4-5, 7-9, and 13-16 of the '811 patent.  IMJUDO® is, and has been, especially made to bind to human CTLA-4.  Thus, IMJUDO® is especially made, and has been made, for use to infringe the claims of the '811 patent.  Further, IMJUDO® is only available, and has only been available, to purchase for use as a product with the claimed features and is not a staple

article of commerce or suited for any substantial non-infringing use.  For all of the reasons above, Defendants know, and have known since at least as early as December 2021, that IMJUDO® is and has been especially made and/or especially adapted for use in infringing the '811 patent.

**ANSWER:   DENIED**.

48.     Through their prescribing information, Defendants have and continue to recommend and encourage healthcare providers to infringe the claims of the '811 patent. Defendants have had and continue to have the specific intent to infringe and actively induce others to infringe the '811 patent.

**ANSWER:  DENIED**.

### The Use of IMJUDO® Infringes the '135 Patent

49.     On information and belief, Defendants have manufactured, distributed, used, offered for sale, sold, and/or imported in the United States the IMJUDO® antibody product to be prescribed and used for the treatment of cancer.

**ANSWER:   ADMITTED** that AstraZeneca Pharmaceuticals LP is currently

manufacturing, distributing, offering for sale, and/or selling the IMJUDO® antibody product in

the United States to be prescribed and used for the treatment of certain types of cancer,

according to the IMJUDO® prescribing information.  Otherwise, **DENIED**.

50.     As described above, and according to prescribing information for IMJUDO®, IMJUDO® is an anti-CTLA-4 antibody used for treating cancer in patients in need of such treatment.  IMJUDO® is specifically indicated for the treatment of uHCC and NSCLC. IMJUDO® is specifically indicated for use in combination with durvalumab in patients with uHCC and in combination with durvalumab and platinum-based chemotherapy in patients with NSCLC.  Based on public information, administering IMJUDO® to a human patient enhances an immune response and inhibits growth of tumor cells in the patient.

**ANSWER:   ADMITTED** that as stated in the IMJUDO® prescribing information,

"[t]remelimumab-actl is a monoclonal antibody that binds to CTLA-4 and blocks the interaction

with its ligands CD80 and CD86, releasing CTLA-4-mediated inhibition of T-cell activation."

**ADMITTED** that according to its prescribing information, IMJUDO® (tremelimumab-actl) "is

a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated" "in

combination with durvalumab for the treatment of adult patients with unresectable hepatocellular carcinoma," and "in combination with durvalumab and platinum-based chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer (NSCLC)." The remaining allegations in paragraph 50 of the Complaint are vague and unclear. Defendants are unable to form a belief as to their truth and therefore **DENY** those allegations.

51.     As described above, and according to its prescribing information, IMJUDO® is administered as an intravenous infusion over 60 minutes as a single dose of 300 mg in combination with durvalumab 1,500 mg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4 weeks or 4 mg/kg of IMJUDO® is administered as an intravenous infusion over 60 minutes as a single dose in combination with durvalumab 20 mg/kg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4 weeks for the treatment of uHCC.

        **ANSWER:   ADMITTED** that, with respect to certain indications, the prescribing information for IMJUDO® recites that IMJUDO® is to be administered as an intravenous infusion over 60 minutes after dilution, for patients that weigh 30 kg or more, of 300 mg of IMJUDO® as a single dose in combination with durvalumab 1,500 mg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4 weeks.  **ADMITTED** that, with respect to certain indications, the prescribing information for IMJUDO® recites that IMJUDO® is to be administered as an intravenous infusion over 60 minutes after dilution, for patients that weigh less than 30 kg, of 4 mg/kg of IMJUDO® as a single dose in combination with durvalumab 20 mg/kg at Cycle 1/Day 1, followed by durvalumab as a single agent every 4 weeks.  Otherwise, **DENIED**.

52.     As described above, and according to its prescribing information, IMJUDO® is administered as an intravenous infusion over 60 minutes as a single dose of 75 mg every 3 weeks in combination with durvalumab 1,500 mg and platinum-based therapy for 4 cycles, followed by durvalumab 1,500 mg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks and then a fifth dose of IMJUDO® 75 mg in combination with durvalumab. Alternatively, IMJUDO® is to be administered as an intravenous infusion over 60 minutes at 1 mg/kg every 3 weeks in combination with durvalumab 20 mg/kg and platinum-based chemotherapy for 4 cycles, and then durvalumab 20 mg/kg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks and then a fifth dose of IMJUDO® 1 mg/kg

in combination with durvalumab for the treatment of NSCLC.[9]

      **ANSWER:   ADMITTED** that, with respect to certain indications, the prescribing

information for IMJUDO® recites that IMJUDO® is to be administered as an intravenous

infusion over 60 minutes after dilution, for patients that weigh 30 kg or more, of 75 mg of

IMJUDO® every 3 weeks in combination with durvalumab 1,500 mg and platinum-based

chemotherapy for 4 cycles, and then administer durvalumab 1,500 mg every 4 weeks as a single

agent with histology-based pemetrexed therapy every 4 weeks, and a fifth dose of IMJUDO®

75 mg in combination with durvalumab dose 6 at week 16.  **ADMITTED** that, with respect to

certain indications, the prescribing information for IMJUDO® recites that IMJUDO® is to be

administered as an intravenous infusion over 60 minutes after dilution, for patients that weigh

less than 30 kg, of 1 mg/kg of IMJUDO® every 3 weeks in combination with durvalumab 20

mg/kg and platinum-based chemotherapy for 4 cycles, and then administer durvalumab 20

mg/kg every 4 weeks as a single agent with histology-based pemetrexed therapy every 4 weeks,

and a fifth dose of IMJUDO® 1 mg/kg in combination with durvalumab dose 6 at week 16.

Otherwise, **DENIED**.

    53.    Durvalumab is a human, monoclonal anti-PD-L1 antibody with a VH of IgG1
isotype that cross-competes for binding to human PD-L1 with at least the reference antibody or
antigen-binding portion thereof which comprises a heavy chain variable region having the amino
acid sequence set forth in SEQ ID NO:2 and a light chain variable region having the amino acid
sequence set forth in SEQ ID NO:12.  Based on public information, the sequence of durvalumab
includes sequences recited in each of claims 1-3, 6-9, 11, 13-14, 17, 24, and 27 of the '135
patent.  Therefore, the use of IMJUDO® according to the instructions in its prescribing
information infringes at least claims 1-3, 6-9, 11, 13-14, 17, 24, and 27 of the '135 patent.

      **ANSWER:   ADMITTED** that as stated in the IMFINZI prescribing information,

"[d]urvalumab is a human immunoglobulin G1 kappa (IgG1 κ) monoclonal antibody that binds

---

to PD-L1 and blocks the interaction of PD-L1 with PD-1 and CD80 (B7.1)."  **DENIED** that the

use of IMJUDO® infringes at least claims 1-3, 6-9, 11, 13-14, 17, 24, and 27 of the '135 patent.

The remaining allegations in paragraph 53 of the Complaint are **DENIED** because they are

vague and unclear and because Defendants lack knowledge or information sufficient to form a

belief as to their truth.

54.     As described above, and according to IMJUDO®'s prescribing information,
IMJUDO® is a human IgG2 anti-CTLA-4 monoclonal antibody.  The use of IMJUDO®
according to the instructions in its prescribing information infringes at least claim 20 of the '135
patent.

ANSWER:   **DENIED** that use of IMJUDO® infringes at least claim 20 of the '135

patent.  **ADMITTED** that the active ingredient in AstraZeneca's IMJUDO® product is the anti-

CTLA-4 antibody tremelimumab-actl.  **ADMITTED** that as stated in the IMJUDO®

prescribing information, "Tremelimumab-actl [is] a cytotoxic T-lymphocyte-associated antigen

4 (CTLA-4) blocking human IgG2 monoclonal antibody."  Otherwise, **DENIED**.

55.     As described above, and according to IMJUDO®'s prescribing information,
IMJUDO® is an anti-CTLA-4 antibody used for treating a cancer in a subject.  According to its
prescribing information, IMJUDO® is administered for uHCC and NSCLC.  Therefore, the use
of IMJUDO® according to the instructions in its prescribing information infringes at least claims
15-16, and 30 of the '135 patent.

ANSWER:   **DENIED** that use of IMJUDO® infringes at least claims 15-16, and 30 of

the '135 patent.  **ADMITTED** that as stated in the IMJUDO® prescribing information,

"[t]remelimumab-actl is a monoclonal antibody that binds to CTLA-4 and blocks the interaction

with its ligands CD80 and CD86, releasing CTLA-4-mediated inhibition of T-cell activation."

**ADMITTED** that according to its prescribing information, IMJUDO® (tremelimumab-actl) "is

a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated" "in

combination with durvalumab for the treatment of adult patients with unresectable

hepatocellular carcinoma," and "in combination with durvalumab and platinum-based

26

chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer

(NSCLC)."  The remaining allegations in paragraph 55 of the Complaint are vague and unclear;

Defendants are unable to form a belief as to the truth of those allegations and therefore **DENY**

them.

56.     As described above, and according to IMJUDO®'s prescribing information,
IMJUDO® is administered in combination with durvalumab to patients on the same day.
Therefore, the use of IMJUDO® according to the instructions in its prescribing information
infringes at least claim 26.

> **ANSWER:   DENIED** that use of IMJUDO® infringes at least claim 26.  **ADMITTED**
>
> that according to the IMJUDO® prescribing information, for some types of cancer, the order of
>
> infusions of certain combination regimens recites that in a regimen of "IMJUDO in
>
> Combination with Durvalumab," one would "[i]nfuse IMJUDO, followed by durvalumab on
>
> the same day of dosing."  Otherwise, **DENIED**.

57.     On information and belief, Defendants have known about the '135 patent since as
early as March 1, 2016, when the '135 patent issued, but in any event, at least before receiving a
copy of this complaint.

> **ANSWER:**   The allegations in paragraph 57 of the Complaint are vague, unclear, and
>
> fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant
>
> AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY**
>
> those allegations.

58.     Defendants have had knowledge of the '135 patent since the '135 patent issued
because AstraZeneca's subsidiary MedImmune, cited the related International Publication No.
WO2007/005874 (International Application No. PCT/US2006/026046), which claims priority to
the same provisional application as the '135 patent, in its own International Publication No.
WO2019/219658 (International Application No. PCT/EP2019/062305).  On information and
belief, Defendants were aware of the MedImmune patent applications, and the citations to the
BMS patents, because, for example, they related to Defendants' product IMFINZI®.

> **ANSWER:**   The allegations in paragraph 58 of the Complaint are vague, unclear, and
>
> fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant

27

AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY** those allegations.

59.     Moreover, Defendants have had knowledge of the '135 patent since the '135 patent issued because Defendants and BMS are direct competitors in the immunotherapy field, and more specifically, in the PD-L1 and CTLA-4 antibody fields.  Defendants market their anti PD-L1 antibody durvalumab under the name IMFINZI® for the treatment of urothelial carcinoma and NSCLC.  BMS markets the anti-PD-1 antibody nivolumab under the name OPDIVO® for treating those same types of cancer.  On information and belief, Defendants began marketing IMFINZI® on May 1, 2017.  Defendants market their anti-CTLA-4 antibody tremelimumab under the name IMJUDO® for the treatment of uHCC and NSCLC.  BMS markets the anti-CTLA-4 antibody ipilumumab under the name YERVOY® for the treatment of hepatocellular cancer and NSCLC.  On information and belief, Defendants began marketing IMJUDO® on October 21, 2022.  On information and belief, Defendants actively monitor their competitors' patent portfolios that could cover the IMJUDO® product.

**ANSWER:   ADMITTED** that according to its prescribing information, IMFINZI (durvalumab) "is a programmed death-ligand 1 (PD-L1) blocking antibody indicated for the treatment" of certain patients with "unresectable, Stage III non-small cell lung cancer (NSCLC)," and is indicated "in combination with etoposide and either carboplatin or cisplatin, as first-line treatment of adult patients with extensive-stage small cell lung cancer (ES-SCLC)." **DENIED** that AstraZeneca currently markets IMFINZI for the treatment of urothelial carcinoma.  **ADMITTED** that according to its prescribing information, OPDIVO (nivolumab) is a PD-1 blocking antibody approved for the treatment of some patients with certain cancers, including metastatic non-small cell lung cancer.  **ADMITTED** that according to its prescribing information, IMJUDO® (tremelimumab-actl) "is a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated" "in combination with durvalumab for the treatment of adult patients with unresectable hepatocellular carcinoma," and "in combination with durvalumab and platinum-based chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer (NSCLC)."  **ADMITTED** that according to its prescribing information, YERVOY® (ipilimumab) is a human cytotoxic T-lymphocyte antigen

4 (CTLA-4) blocking antibody indicated for some cancer treatments.  **ADMITTED** that as

shown by the prescribing information for IMJUDO®, AstraZeneca AB received approval from

the FDA in 2022 to market and sell IMJUDO®, in combination with durvalumab, as a

treatment for certain patients with unresectable hepatocellular carcinoma.  **ADMITTED** that as

shown by the prescribing information for IMJUDO®, AstraZeneca AB received approval from

the FDA in 2022 to market and sell IMJUDO®, in combination with durvalumab and platinum-

based chemotherapy, as a treatment for certain patients with metastatic non-small cell lung

cancer (NSCLC) with no sensitizing epidermal growth factor receptor (EGFR) mutation or

anaplastic lymphoma kinase (ALK) genomic tumor aberrations.  The remaining allegations in

paragraph 59 of the Complaint are vague, unclear, and fail to distinguish between Defendant

AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca AB.  Defendants are unable to

form a belief as to their truth and therefore **DENY** those allegations.

60.    AstraZeneca has had knowledge of the '135 patent since the '135 patent issued
because it is a large company that monitors its competitors' patent portfolios for patents that
cover IMFINZI® and IMJUDO®.

**ANSWER:**   The allegations in paragraph 60 of the Complaint are vague, unclear, and

fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant

AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY**

those allegations.

61.    In the absence of actual knowledge, Defendants have at least been willfully blind
to the existence of the '135 patent since the '135 patent issued.  Defendants own or control
numerous patents covering IMFINZI® and IMJUDO ®.  Additionally, BMS and Defendants are
actively involved in patent litigation over IMFINZI®.  IMJUDO® and IMFINZI® are related
products—both are immunotherapy products used to treat cancer.  IMJUDO® has only been
approved for use in combination with IMFINZI® (durvalumab).  At least one of the patents
asserted in the IMFINZI® litigation includes claims that describe administering anti-CTLA-4
antibodies in combination with anti-PD-L1 antibodies.  Moreover, the '135 patent belongs to the
same family of patents as two of the patents asserted in the IMFINZI® litigation and covers anti-
PD-L1 antibodies with the same structural features as those asserted in the IMFINZI® litigation.

Thus, as a result of the IMFINZI® litigation, which commenced on March 17, 2022, Defendants were on notice that BMS owns patents that cover methods of treatment using anti-CTLA-4 antibodies in combination with anti-PD-L1 antibodies, i.e., the combination for which IMJUDO® is approved.  To the extent Defendants have not investigated the full scope of BMS's anti-CTLA-4 patent portfolio, including whether BMS owns patents that may cover IMJUDO® or its use in methods of treating cancer, they have been willfully blind to these patents.

ANSWER:   The allegations in paragraph 61 of the Complaint are vague, unclear, and

fail to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant

AstraZeneca AB.  Defendants are unable to form a belief as to their truth and therefore **DENY**

those allegations.

62.   Defendants also had knowledge of other patents owned/licensed by BMS that related to the use of an anti-CTLA-4 antibody.  AstraZeneca is a sophisticated company and, on information and belief, monitors the patent estates of its competitors for patents that could cover the use of IMJUDO®.  If Defendants did not have actual knowledge of the '135 patent, it is because Defendants took deliberate actions to avoid learning specifically about the '135 patent.  If Defendants did not have actual knowledge of the existence of the '135 patent, it is because Defendants were willfully blind to the existence of the '135 patent.

ANSWER:   **DENIED** that Astra Zeneca took deliberate actions to avoid learning about

the '135 patent.  **DENIED** that AstraZeneca was willfully blind to the existence of the '135

patent.  The remaining allegations in paragraph 62 of the Complaint are vague, unclear, and fail

to distinguish between Defendant AstraZeneca Pharmaceuticals LP and Defendant AstraZeneca

AB.  Defendants are unable to form a belief as to their truth and therefore **DENY** those

allegations.

63.   Defendants have known that the use of IMJUDO® in patients to treat cancer will infringe and does infringe at least claims 1-3, 6-9, 11, 13-16, 17, 20, 24, 26-27 and 30 of the '135 patent since at least as early as March 2022, but in any event, no later than the date they received a copy of this complaint.  IMJUDO® is sold in a highly regulated market and Defendants provided detailed prescribing information to users about how to administer and use IMJUDO®.

ANSWER:   **DENIED** that use of IMJUDO® infringes at least claims 1-3, 6-9, 11, 13-

16, 17, 20, 24, 26-27 and 30 of the '135 patent.  The remaining allegations in paragraph 63 of

the Complaint are vague, unclear, and fail to distinguish between Defendant AstraZeneca

Pharmaceuticals LP and Defendant AstraZeneca AB.  Defendants are unable to form a belief as

to their truth and therefore **DENY** those allegations.

64.     If Defendants did not have actual knowledge that the use of IMJUDO® in
patients to treat cancer infringes at least claims 1-3, 6-9, 11, 13-16, 17, 20, 24, 26-27 and 30 of
the '135 patent, then Defendants were willfully blind to that fact.  Defendants had actual
knowledge of the '135 patent or were willfully blind to the existence of the '135 patent.
AstraZeneca is a sophisticated company and upon learning of a patent that covers the use of an
anti-CTLA-4 antibody according to the treatment regimen in IMJUDO®'s prescribing
information, Defendants subjectively believed that there was a high probability the use of
IMJUDO® would infringe the '135 patent.  Based on the similarity between the '135 patent's
claims, IMFINIZI®'s amino acid sequence, and IMJUDO®'s prescribing information, the only
way that Defendants would not know that the use of IMJUDO® infringed the '135 patent would
be because Defendants took deliberate action to avoid learning that the use of IMJUDO®
infringed the '135 patent.

    **ANSWER:  DENIED**.

65.     Defendants have contributed, and continue to contribute, to the infringement of at
least claims 1-3, 6-9, 11, 13-16, 17, 20, 24, 26-27 and 30 of the '135 patent.  IMJUDO® is, and
has been, especially made to bind to human CTLA-4.  IMJUDO® is only approved for use in
combination with IMFINZI®.  Durvalumab, the active ingredient in IMFINZI®, has the features
of the anti-PD-L1 antibody described in the claims.  Thus, IMJUDO® is especially made, and
has been made, for use to infringe the claims of the '135 patent.  Further, IMJUDO® is only
available, and has only been available, to purchase for use as a product with the claimed features
and is not a staple article of commerce or suited for any substantial non-infringing use.  For all of
the reasons above, Defendants know, and have known since at least as early as March 2022 that
IMJUDO® is and has been especially made and/or especially adapted for use in infringing the
'135 patent.

    **ANSWER:  DENIED**.

66.     Through its prescribing information, Defendants have and continue to recommend
and encourage healthcare providers to infringe the claims of the '135 patent.  Defendants have
had and continue to have the specific intent to infringe and actively induce others to infringe the
'135 patent.

    **ANSWER:  DENIED**.

    **COUNT I:  INFRINGEMENT OF U.S. PATENT NO. 9,320,811**

67.     BMS incorporates by reference paragraphs 1-66 as if fully set forth herein.

**ANSWER:**   Defendants restate and incorporate by reference each of the foregoing responses to paragraphs 1-66 as if fully set forth herein.

68.     On information and belief, Defendants have marketed, made, used, sold, offered for sale, and/or imported IMJUDO® in the United States for the treatment of cancer, and continue to do so.  On information and belief, IMJUDO® was and continues to be used for the treatment of cancer in the United States.  As set forth above, Defendants are thereby infringing at least claims 1-2, 4-5, 7-9, and 13-16 of the '811 patent, including by actively inducing infringement under 35 U.S.C. § 271(b) and as contributory infringers under 35 U.S.C. § 271(c).

**ANSWER:   ADMITTED** that AstraZeneca Pharmaceuticals LP is currently

manufacturing, marketing, distributing, offering for sale, and/or selling the IMJUDO® antibody

product in the United States to be prescribed and used for the treatment of certain types of

cancer, according to the IMJUDO® prescribing information.  **DENIED** that AstraZeneca is

thereby infringing at least claims 1-2, 4-5, 7-9, and 13-16 of the '811 patent, including by

actively inducing infringement under 35 U.S.C. § 271(b) and as contributory infringers under

35 U.S.C. § 271(c).  Otherwise, **DENIED**.

69.     On information and belief, Defendants have been aware of the '811 patent since at least as early as December 2021 and Defendants' infringement is deliberate, egregious, willful, and in reckless disregard of valid patent claims of the '811 patent.

**ANSWER:  DENIED**.

70.     BMS has been and will continue to be injured by, and has suffered, and will continue to suffer, substantial damages, including lost profits, as a result of Defendants' infringement.

**ANSWER:  DENIED**.

71.     This case is exceptional and BMS is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**ANSWER:**   Defendants **DENY** that Plaintiffs are entitled to an award of attorneys'

fees under 35 U.S.C. § 285, or any relief whatsoever.  Plaintiffs' conduct renders this case

exceptional and entitles Defendants to attorneys' fees.

32

## COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 9,273,135

72.     BMS incorporates by reference paragraphs 1-71 as if fully set forth herein.

**ANSWER:**   Defendants restate and incorporate by reference each of the foregoing responses to paragraphs 1-71 as if fully set forth herein.

73.     On information and belief, Defendants have marketed, made, used, sold, offered for sale, and/or imported IMJUDO® in the United States for the treatment of cancer, and continue to do so.  On information and belief, IMJUDO® was and continues to be used for the treatment of cancer in the United States.  As set forth above, Defendants are thereby infringing at least claims 1-3, 6-9, 11, 13-16, 17, 20, 24, 26-27 and 30 of the '135 patent, including by actively inducing infringement under 35 U.S.C. § 271(b) and as contributory infringers under 35 U.S.C. § 271(c).

**ANSWER:   ADMITTED** that AstraZeneca Pharmaceuticals LP is currently manufacturing, marketing, distributing, offering for sale, and/or selling the IMJUDO® antibody product in the United States to be prescribed and used for the treatment of certain types of cancer, according to the IMJUDO® prescribing information.  **DENIED** that AstraZeneca is thereby infringing at least claims 1-3, 6-9, 11, 13-16, 17, 20, 24, 26-27 and 30 of the '135 patent, including by actively inducing infringement under 35 U.S.C. § 271(b) and as contributory infringers under 35 U.S.C. § 271(c).  Otherwise, **DENIED**.

74.     On information and belief, Defendants have been aware of the '135 patent since at least as early as March 2022 and Defendants' infringement is deliberate, egregious, willful, and in reckless disregard of valid patent claims of the '135 patent.

**ANSWER:   ADMITTED** that AstraZeneca has known about the '135 patent before receiving a copy of this complaint.  Otherwise, **DENIED**.

75.     BMS has been and will continue to be injured by, and has suffered, and will continue to suffer, substantial damages, including lost profits, as a result of Defendants' infringement.

**ANSWER:  DENIED**.

76.     This case is exceptional and BMS is entitled to an award of attorneys' fees under

35 U.S.C. § 285.

    **ANSWER:**  Defendants **DENY** that Plaintiffs are entitled to an award of attorneys' fees under 35 U.S.C. § 285, or any relief whatsoever.  Plaintiffs' conduct renders this case exceptional and entitles Defendants to attorneys' fees.

    The paragraphs following the titles "Jury Demand" and "Prayer for Relief" contain legal conclusions to which the law requires no response.  To the extent a response is required, Defendants **DENY** each and every allegation of the paragraphs following the Jury Demand and Prayer for Relief and **DENY** that Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

As separate defenses to the allegations of the Complaint, Defendants set forth the following affirmative and other defenses.  Defendants do not intend hereby to assume the burden of proof with respect to those matters as to which, pursuant to law, Plaintiffs bear the burden. Defendants reserve the right to amend this Answer as additional information becomes available.

    77.    Defendants incorporate by reference each of paragraphs 1-76 above as if fully set forth herein.

## FIRST DEFENSE:  LICENSE

    78.    To the extent that the use of IMJUDO® infringes any claim of the '135 patent, AstraZeneca markets IMJUDO® under a license to the '135 patent.

    79.    Tremelimumab, the active ingredient in IMJUDO®, was previously developed by Pfizer Inc.  Medarex, Inc., the predecessor to E.R. Squibb & Sons, L.L.C., entered into a License Agreement with Pfizer Inc. related to CTLA-4 antibodies in September 2004.  Medarex and Pfizer amended this agreement in April 2007.  Pursuant to these agreements, Medarex granted to Pfizer a non-exclusive license to the '135 patent with respect to tremelimumab.

80.     Pursuant to a September 28, 2011 License Agreement, Pfizer Inc. granted various rights in tremelimumab to AstraZeneca UK Limited.  Among the rights granted by Pfizer to AstraZeneca UK Limited were the rights Medarex had granted to Pfizer with respect to the '135 patent with respect to tremelimumab.

81.     AstraZeneca UK Limited in turn has sublicensed to AstraZeneca Pharmaceuticals LP any intellectual property rights that it needs to commercialize IMJUDO® in the United States.

### SECOND DEFENSE:  FAILURE TO STATE A CLAIM

82.     The Complaint fails to state a claim upon which relief can be granted.

### THIRD DEFENSE:  INVALIDITY

83.     The claims of the '811 and '135 patents are invalid for failure to comply with the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 256 *et seq.*, and/or under the judicially created doctrine of obviousness-type double patenting, *inter alia*, on the basis that they fail to comply with the enablement, written description, and definiteness requirements of 35 U.S.C. § 112, and/or that they are anticipated or rendered obvious.

### FOURTH DEFENSE:  NON-INFRINGEMENT

84.     Defendants have not engaged in any unlicensed conduct that infringed or will infringe, whether directly, indirectly, contributorily, or by inducement, any valid and enforceable claim of the '811 and '135 patents, either literally or under the doctrine of equivalents.

### FIFTH DEFENSE:  LACK OF STANDING

85.     Plaintiffs lack standing to assert the '811 and '135 patents in this action because they do not own all rights to those patents.

### SIXTH DEFENSE:  35 U.S.C. § 271(e)

86.     Plaintiffs' claims for relief are limited by the safe harbor provisions of 35 U.S.C. § 271(e).

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

87.     Defendants incorporate by reference each of paragraphs 1–86 above as if fully set forth herein.

88.     This is an action for declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202.  Defendants seek a declaration that U.S. Patent No. 9,320,811 ("the '811 patent") titled "Combination of Anti-CTLA4 Antibody with Diverse Therapeutic Regimens for the Synergistic Treatment of Proliferative Diseases," and issued on April 26, 2016, is invalid, and a declaration that the manufacture, use, offer for sale, sale, or importation into the United States of IMJUDO® (tremelimumab-actl), an FDA-approved pharmaceutical product used to treat certain patients suffering from cancer, does not infringe the '811 patent and does not induce infringement of, or contribute to the infringement of the '811 patent by others.

89.     This is an action for declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201–2202.  Defendants seek a declaration that U.S. Patent No. 9,273,135 ("the '135 patent") titled "Human Monoclonal Antibodies to Programmed Death Ligand 1 (PD-L1)," and issued on March 1, 2016, is invalid, and a declaration that the manufacture, use, offer for sale, or importation into the United States of IMJUDO® (tremelimumab-actl), an FDA-approved pharmaceutical product used to treat certain patients suffering from cancer, does not infringe the '135 patent and does not induce infringement of, or contribute to the infringement of the '135 patent by others.

## THE PARTIES

ME1 44202838v.1

90.     AstraZeneca AB is a private limited company organized under the laws of Sweden, with its registered office at Södertälje, Sweden SE-15185.  AstraZeneca AB is the holder of Biologics License Application ("BLA") No. 761289 for IMJUDO® (tremelimumab-actl).

91.     AstraZeneca Pharmaceuticals LP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business at 1800 Concord Pike, Wilmington, Delaware 19803.

92.     Upon information and belief based upon Plaintiffs' allegations, Bristol-Myers Squibb Co. is a corporation organized under the laws of the state of Delaware, with a principal place of business in New Jersey.  Upon information and belief based upon Plaintiffs' allegations, E. R. Squibb & Sons, L.L.C., is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business in New Jersey.

## JURISDICTION AND VENUE

93.     Assuming that this Court has subject matter jurisdiction over Plaintiffs' Complaint, then this Court also has jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201–2202.

94.     On information and belief based upon Plaintiffs' allegations, this Court has personal jurisdiction over Plaintiffs because they have purposely availed themselves of the benefits and protections of Delaware law such that they should reasonably anticipate being haled into court here.

95.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## BACKGROUND

ME1 44202838v.1

96.     AstraZeneca AB received approval from the FDA in 2022 to market and sell IMJUDO®, in combination with durvalumab, as a treatment for certain patients with unresectable hepatocellular carcinoma.

97.     AstraZeneca AB received approval from the FDA in 2022 to market and sell IMJUDO®, in combination with durvalumab and platinum-based chemotherapy, as a treatment for certain patients with metastatic non-small cell lung cancer (NSCLC) with no sensitizing epidermal growth factor receptor (EGFR) mutation or anaplastic lymphoma kinase (ALK) genomic tumor aberrations.

98.     According to its prescribing information, IMJUDO® (tremelimumab-actl) "is a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking antibody indicated" "in combination with durvalumab for the treatment of adult patients with unresectable hepatocellular carcinoma," and "in combination with durvalumab and platinum-based chemotherapy for the treatment of adult patients with metastatic non-small cell lung cancer (NSCLC)."

99.     The active ingredient in AstraZeneca's IMJUDO® product is the anti-CTLA-4 antibody tremelimumab-actl.  As stated in the IMJUDO® prescribing information, "Tremelimumab-actl [is] a cytotoxic T-lymphocyte-associated antigen 4 (CTLA-4) blocking human IgG2 monoclonal antibody."  As stated in the IMJUDO® prescribing information, "[t]remelimumab-actl is a monoclonal antibody that binds to CTLA-4 and blocks the interaction with its ligands CD80 and CD86, releasing CTLA-4-mediated inhibition of T-cell activation."

100.    The active ingredient in IMJUDO®, tremelimumab-actl, is distributed in the United States by AstraZeneca Pharmaceuticals LP.

101.    Plaintiffs contend that the use of IMJUDO® infringes various claims of the '811 and '135 patents.

## COUNT 1:  DECLARATORY JUDGMENT OF INVALIDITY

102.    Defendants incorporate by reference each of paragraphs 1–101 above as if fully set forth herein.

103.    Assuming that this Court has subject matter jurisdiction over Plaintiffs' Complaint, there is an actual controversy between Defendants on the one hand and Plaintiffs on the other hand as to whether the claims of the '811 and '135 patents are valid.

104.    The claims of the '811 and '135 patents are invalid for failure to comply with the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103, 112, 116, and/or 256 *et seq.*, and/or under the judicially created doctrine of obviousness-type double patenting, *inter alia*, on the basis that they fail to comply with the enablement, written description, and definiteness requirements of 35 U.S.C. § 112, and/or that they are anticipated or rendered obvious.

105.    Defendants hereby seek a declaration that the claims of the '811 and '135 patents are invalid.

## COUNT II:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT

106.    Defendants incorporate each of the preceding paragraphs 1–105 as if fully set forth herein.

107.    Assuming that this Court has subject matter jurisdiction over Plaintiffs' Complaint, there is an actual controversy between Defendants on the one hand and Plaintiffs on the other hand as to whether the importation into the United States, making, use, offer for sale, and/or sale of IMJUDO® infringes the '811 and '135 patents or contributes to or induces infringement by others.

108. The importation into the United States, making, use, offer for sale, and/or sale of IMJUDO® does not infringe the '811 and '135 patents or contribute to or induce infringement by others.

109. Defendants hereby seek a declaration that the importation into the United States, making, use, offer for sale, and/or sale of IMJUDO® (tremelimumab-actl) does not infringe the '811 and '135 patents or contribute to or induce infringement by others.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants respectfully request that judgment be entered in favor of Defendants and against Plaintiffs, with Plaintiffs not being awarded any relief, and Defendants receiving the following relief:

(a) A declaration that each and every claim of the '811 and '135 patents is invalid;

(b) A declaration that that the importation into the United States, manufacture, use, offer for sale, and/or sale of IMJUDO® (tremelimumab-actl) does not infringe the '811 and '135 patents or contribute to or induce infringement by others, either literally or under the doctrine of equivalents;

(c) A declaration that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award to Defendants of their reasonable attorney fees, costs, and expenses in this action; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Defendants-counterclaim plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  February 15, 2023

OF COUNSEL:

David I. Berl
Jessamyn S. Berniker
Thomas S. Fletcher
Jessica L. Pahl
Jessica P. Ryen
Seth R. Bowers
Kevin Hoagland-Hanson
Lydia B. Cash
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
dberl@wc.com
jberniker@wc.com
tfletcher@wc.com
jpahl@wc.com
jryen@wc.com
sbowers@wc.com
khoagland-hanson@wc.com
lcash@wc.com

MCCARTER & ENGLISH, LLP

/s/ Daniel M. Silver
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Counsel for Defendants

41

ME1 44202838v.1